UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Case No. 19-CR-213

JOHN M. SOLBERG,                                      USCA Case No. 23-1495

Defendant.

## ORDER GRANTING MOTION TO APPEAL *IN FORMA PAUPERIS*

On November 27, 2019, a fifteen-count Indictment was returned charging Defendant John M. Solberg with conspiracy to commit mail, wire, and bank fraud, and fourteen individual counts of wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344, all arising out of a fraudulent scheme involving the sale of motor vehicles held on consignment and retention of the funds received. Dkt. No. 1. On August 19, 2022, after almost three years of delays, Solberg, represented by Attorney Mark Richards, his fifth attorney, entered a guilty plea to one count of mail fraud contrary to 18 U.S.C. §§ 1341 and 2. Solberg's guilty plea was entered during a video conference change of plea hearing pursuant to a written Plea Agreement that included a waiver of his right to appeal, subject to limited exceptions. Dkt. No. 57 at ¶ 31.

On September 30, 2022, after the probation agent assigned to complete the Presentence Investigation reported that he was unable to schedule an interview with Solberg, the court issued a Notice to Appear directing Solberg to return to court for a review hearing. Dkt. No. 59. The following week, Attorney Richards filed a motion to withdraw as counsel on the grounds that Solberg had accused him of "lying, misrepresentation, and engaging in unethical behavior to trick

him into pleading guilty" and thereby rendered the attorney/client relationship "irretrievably broken." Dkt. Nos. 60–61. Attached to Attorney Richards' motion was a 29-page document, which Solberg instructed Attorney Richards to file with the court. Dkt. No. 62. That document includes Solberg's version of events beginning with his arrest and addresses his various disputes with Attorney Richards over the date of his signature on the Plea Agreement. *Id.* at 5. Also included is an October 5, 2022 letter from Attorney Richards to the undersigned explaining his version of a dispute with Solberg over the date of his signature on the Plea Agreement as well as other matters that had arisen since. *Id.* at 27–29.

On October 7, 2022, the court held a hearing on Solberg's failure to meet with the agent assigned to conduct the presentence investigation and Attorney Richards' motion to withdraw as counsel. Dkt. Nos. 64, 66. After a lengthy discussion of Solberg's concerns about restitution and the sentence that could be imposed, the court asked him whether he wished to move to withdraw his plea or not:

> You'd have to tell me what is your position now? Is it your claim that the plea was not voluntary? And you're asking to withdraw it? Or are you going to go forward with the plea and the plea agreement and -- and proceed from there?

Dkt. No. 66 at 21:04–08.

In response to the court's question, Solberg eventually responded, "I'm not looking to undo the process and go to trial and to vacate the plea." *Id.* at 22:02–03. Solberg also denied wanting a different attorney, explaining, "I like Mr. Richards, I'm not going to find a more qualified, better person." *Id.* at 21:23–24. At that point, the court offered the following summary:

> But at this point my -- if I'm hearing you correctly, Mr. Solberg, and I'm not sure I've got a real clear answer, but my understanding is you're not seeking a different attorney, you're not moving to withdraw your plea, you have some problems with the timing of things, you -- the attorneys are going to talk to see if they work things out. I've indicated that -- a willingness, and, of course, it's required by law that I not

2

--you know, that I give you an opportunity or your attorney an opportunity to prepare for sentencing, but that doesn't mean we push it off indefinitely.

*Id.* at 23:02–11. Solberg responded: "Right." *Id.* at 23:12. To accommodate Attorney Richards' schedule and allow full and complete preparation for sentencing, the court then granted the defense motion to move the sentencing hearing from November 10, 2022, to January 5, 2023.

On January 5, 2023, the case finally proceeded to sentencing. After hearing heart-wrenching stories from several of a courtroom full of victims, *see, e.g.*, Dkt. No. 68 at ¶¶ 64–81, the court imposed a mid-guideline range sentence of thirty (30) months, restitution of $290,451.57, and three years of supervised release, and remanded the defendant to custody to begin serving his sentence. Of course, after a defendant has entered a plea of guilty and been sentenced to prison, he has no constitutional right to remain out of custody. However, Section 3143(a) of Title 18 gives a district court discretion to delay execution of a defendant's prison sentence if the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). If the court makes such a finding, the court "shall order the release of the person in accordance with section 3142(b) or (c)." *Id.* The court elected not to delay Solberg's reporting date given the long delays that had already occurred in the case, the appeal waiver, and the mid-guideline sentence. Dkt. No. 115 at 15:08–13. Indeed, the court had suggested the possibility that he could be taken into custody immediately following sentencing at the October 7 hearing on Attorney Richards' motion to withdraw. The court acknowledged at that hearing that voluntary surrender was a possibility but noted that when you commit a crime, it's not like you get to check into a hotel on your own schedule. Dkt. No. 66 at 17:22–25.

Judgment was entered on January 9, 2023. Dkt. No. 76. On January 13, 2023, the court received a letter from Attorney Richards stating that he had spoken with Solberg regarding his

3

right to appeal and that he "will not be appealing any part of the judgment against him." Dkt. No. 78. On January 23, 2023, the government filed a Motion to Amend Final Judgment As To Restitution. Dkt. No. 81. The government stated in its motion that it had inadvertently failed to include a request for $17,000 from E.B., an additional victim, in its restitution request. The government further stated that it had provided the supporting documentation for the request to defense counsel and the defense had no objection to the motion to include this amount. *Id.* ¶¶ 3–4, 6. The court granted the government's unopposed motion by docket entry on January 31, 2023. Dkt. No. 82. The Amended Judgment was entered on February 2, 2023. Dkt. No. 84. On March 6, 2023, Solberg filed his 60-page pro se Notice of Appeal.

On April 3, 2023, Solberg filed a motion seeking an extension of time to file his notice of appeal. Dkt. No. 90. The court denied his motion in an order dated May 1, 2023. Dkt. No. 98. Counting from the Judgment entered on January 9, 2023, the court concluded that not only was Solberg's March 6, 2023 Notice of Appeal untimely, but it was even beyond the thirty-day period by which a district court could extend it even upon a finding of good cause under Fed. R. App. P. 4(b)(4). *Id.* at 3. It was the court's view that the unopposed amended judgment that added to the restitution originally ordered did not operate to reopen the window for filing an appeal of the underlying conviction and sentence. *See United States v. Gilbert*, 807 F.3d 1197, 1200 (9th Cir. 2015) ("We join our sister circuits in holding that a sentence of incarceration coupled with an unspecified amount of restitution is a sufficiently final judgment to support a direct appeal. It follows that once the time for filing a direct appeal of this type of judgment expires, the one-year limitation period under § 2255(f) is triggered."); *see also Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment.").

4

On May 5, 2023, the Court of Appeals issued an order in which it concluded that this court had erred in failing to consider that Solberg's time to appeal had run from the amended judgment adding to the restitution, as opposed to the original judgment. Counting from February 2, 2023, the date on which the amended judgment was entered, the Court of Appeals concluded that Solberg's notice, though late, had fallen "within the thirty-day extended period permitted under Fed. R. App. P. 4(b)(4), contrary to the district court's determination." Case No. 23-1495, Dkt. No. 44 at 2 (7th Cir.). The Court of Appeals then directed the government to file a "brief memorandum addressing whether this appeal should be remanded to the district court to reconsider its ruling on appellant's motion to extend time" or, in the alternative, waive the 14-day appeal period. *Id.* The government elected to waive the 14-day appeal period, and the appeal has proceeded.

Solberg's original appeal has been assigned case number 23-1495, followed by four additional notices of appeal, assigned numbers 23-2298, 22-2299, 23-2351, and 23-2474 respectively. Solberg has filed no less than 52 motions in this court, 22 of which remain pending, seeking various forms of relief including acquittal, disqualification of the Judge, immediate release, removal of counsel, return of property, appointment of counsel, strike (plea) pleadings, and withdrawal of his plea. He has also filed four motions for relief under 28 U.S.C. § 2255 and/or 2241. The case is now before the court on Solberg's Motion For Leave To Appeal *In Forma Pauperis*. The Court of Appeals appointed Attorney Johanna Christiansen to assist the defendant in filing a complete and accurate motion to proceed *in forma pauperis*, and it is to that motion, Dkt. No. 216, and his pro se motion, Dkt. No. 212, that I now turn.

The financial affidavits submitted with both Defendant's pro se motion to proceed *in forma pauperis*, Dkt. No. 212, and Counsel's motion, Dkt. No. 216, indicate that his 12-month average

income is $9,400 per month, but anticipates approximately $2,900 for the next month due to both the seasonal nature of his construction business and the fact that he is unable to contribute to the business while incarcerated.  Dkt. No. 216 at 3.  The affidavit also references "passive income" but does not indicate either the amount or the source.  Solberg has listed his home as an asset with a market value of $370,000 on which he owes $120,000, resulting in equity of $250,000. Solberg's motion notes that "obtaining funds from the property value would necessitate selling the home, which is not a (sic) expedient or viable option at this time."  Dkt. 216 at 3.  The affidavit lists a credit union savings account of under $500 and funds in attorney trust accounts of $50,000 and $15,000, but notes they may be "lost."  The prisoner trust account statement provided for the period between March 14, 2023 through October 5, 2023 shows just over $3,600 deposited to his account, averaging about $550 per month not including the nominal wages he earns.  The motion counsel filed states that Defendant's financial affidavit establishes his inability to employ retained counsel and notes that the court found him eligible for court appointed counsel at the onset of this case.

Solberg has paid the filing fee for this appeal, 23-1495, so that is not at issue here.  The standard for deciding whether a person is entitled to proceed *in forma pauperis* on an appeal in criminal cases looks to more than the person's ability to pay the filing fee.  *In forma pauperis* status for defendants in direct criminal appeals is determined on the basis of whether the defendant is "financially able to obtain counsel," not merely whether the defendant can pay the appellate fees or costs of transcripts.  *See* 18 U.S.C. § 3006A(b).  The issue this court must decide is whether Solberg currently has the funds to retain counsel on his own.

Having considered the affidavit filed in support of the motion and the entire record in this matter, I am unable to conclude that Solberg currently has the financial resources to retain counsel.

It may be that some of the $50,000 and $15,000 retainers held in trust by Attorneys Richards and Reetz, respectively, could be made available, but the court does not have the information needed to make that assessment. Likewise, the court lacks information as to the source and amount of Solberg's passive income to determine that he could retain counsel. Solberg's home would certainly be available to secure a loan, but the court has no information as to how Solberg, presently serving his sentence in federal prison, would arrange such a loan and whether he could find a willing lender, even with such security. In other words, while it would appear that Solberg has assets of a value that, if liquidated, would likely be sufficient, he does not currently have the funds needed to retain counsel for his appeal.

Motions to proceed in civil and criminal proceedings or appeals therein are governed by 28 U.S.C. § 1915. Subsection (a)(1) of that section provides:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees *or give security therefor*. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1) (italics added). Given the $250,000 of equity Solberg has in his home, it would appear that he would be able to give security for the amount of the attorney's fees and costs that he would incur for his appeal. As a practical matter, however, it does not appear that attorneys who practice in the area of criminal law are willing to take on a case for a security interest in their client's property. I therefore conclude that Solberg is financially unable to retain counsel at this time and that counsel may be appointed under 18 U.S.C. § 3006A(b). But because it appears that that funds are available for payment from or on behalf of Solberg in the form of his nonliquid

assets, Solberg should be ordered to repay the court for the attorney's fees and costs incurred in the appeal for deposit in the Treasury as allowed under § 3006A(f).

I have gone into some detail in recounting the history of the case in light the requirement that an appeal *in forma pauperis* be taken in good faith. Under the Federal Rules of Appellate Procedure, a party who has been granted leave to proceed *in forma pauperis* in the district court may proceed *in forma pauperis* on appeal unless the district court certifies that the appeal is not taken in good faith or determines that the party is otherwise not entitled to proceed *in forma pauperi*s. Fed. R. App. P. 24(a)(3); *see also* 28 U.S.C. § 1915(a)(3). An appeal taken in "good faith" is one that seeks review of any issue that is not frivolous, meaning that it involves "legal points arguable on their merits." *Howard v. King*, 707 F.2d 215, 219–20 (5th Cir. 1983) (quoting *Anders v. California*, 386 U.S. 738 (1967)); *see also Coppedge v. United States*, 369 U.S. 438, 445 (1962). To act in bad faith means to sue on the basis of a claim that no reasonable person could suppose to have any merit. *See Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (holding that an appeal in a frivolous suit cannot be "in good faith" under 28 U.S.C. § 1915(a)(3) because "good faith" must be viewed objectively). Thus, the existence of any nonfrivolous issue on appeal is sufficient to require the court to grant the petition.

Solberg has filed such a large amount of material with the court (his notice of appeal alone is over 60 pages) that it is difficult to determine what issue or issues he intends to appeal. He seemed most upset about the court's decision to remand him to custody and not allow him a delay in the execution of his sentence. At this point, however, that would no longer seem to be an issue, as the court has dismissed the appeal of that issue. Solberg has also alleged that his attorney provided inaccurate and ineffective advice that led him to plead guilty, that I was biased and prejudiced against him, and that he is actually innocent of all charges. It is difficult to see how the

current record supports these allegations in light of the transcript of the plea hearing and the hearing held shortly thereafter where Solberg affirmed his decision to plead guilty and denied any interest in retaining a new attorney. Solberg has also filed several motions for relief under 28 U.S.C. § 2255, which would seem to be the proper vehicle for asserting the claims he has asserted. Those motions have been denied without prejudice as premature, given Solberg's direct appeal. Nevertheless, given the voluminous materials filed with both this court and the Court of Appeals, I am unable to certify that he has raised no issue that does not warrant review. Accordingly, I do not certify that this appeal is taken in bad faith.

**IT IS THEREFORE ORDERED** that Defendant John M. Solberg's motion for to appeal *in forma pauperis* is **GRANTED** in that he currently lacks the funds to retain counsel on his own.

**IT IS FURTHER ORDERED** that because funds are available to Solberg in the form of his nonliquid assets, he shall repay the court for the attorney's fees and costs incurred in his appeal for deposit in the Treasury as provided under 18 U.S.C. § 3006A(f).

Dated at Green Bay, Wisconsin this 26th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge